**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Johnnie Fuson,<br><br>    Plaintiff,<br><br>v.<br><br>Office of Navajo and Hopi Indian Relocation,<br><br>    Defendant. | No. CV-21-08237-PCT-DJH<br><br>**ORDER** |

Plaintiff Johnnie Fuson ("Mr. Fuson" or "Plaintiff") has filed an administrative appeal challenging the denial of relocation benefits under 25 C.F.R. § 700.147. (Doc. 14 at 2). Plaintiff filed a Motion for Summary Judgment, asking this Court to (1) overturn Defendant Office of Navajo and Hopi Indian Relocation's ("ONHIR" or "Defendant") denial of relocation benefits and (2) issue declaratory injunctive relief granting his application for said benefits. (*Id.*) Defendant filed a Cross-Motion for Summary Judgment, asking this Court to uphold ONHIR's prior decision to deny Plaintiff relocation benefits. (Doc. 16).

**I.    Background**

This case arises from the Navajo–Hopi Settlement Act ("Act"), which partitioned "the former Joint Use Area ("JUA") between the Navajo and Hopi Tribes when the two tribes were unable to resolve their longstanding land dispute." (Doc. 14 at 3); *see* Pub. L. No. 93-531, 88 Stat. 1712 (Dec. 22, 1974). Under the Act, enrolled members subject to relocation from land partitioned to the other Tribe may qualify for relocation benefits and

assistance. *See* 25 C.F.R. § 700.138. Plaintiff is an enrolled member of the Navajo Nation and applied for such benefits on August 26, 2010, but was denied by ONHIR. (Docs. 14 at 4; 16 at 3). Plaintiff appealed the decision, and a hearing was held August 21, 2015. (Doc. 16 at 3).

The Independent Hearing Officer ("IHO") denied Plaintiff's appeal, issuing the decision on October 23, 2015. (*Id.* at 5). The IHO found "[n]o credible evidence exists in the record" to conclude Plaintiff possessed legal residence at his family's Hopi Partitioned Lands ("HPL") camp on December 22, 1974. (Doc. 11 at 220). Rather, the IHO found Plaintiff was either a legal resident of (1) the Teesto Chapter area of the Navajo Reservation or (2) the Seba Dalkai School. (*Id.*) ONHIR affirmed the IHO's decision on November 23, 2015. (Doc. 16 at 6). Plaintiff claims the denial of relocation benefits violated the Act, and he seeks judicial review by this Court under the Administrative Procedure Act ("APA"). (Doc. 14 at 3).

**II.   Legal Standard**

When conducting judicial review under the APA, "the reviewing court can reverse only if the agency action was arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence." *Bedoni v. Navajo–Hopi Indian Relocation Comm'n*, 878 F.2d 1119, 1122 (9th Cir. 1989) (citing 5 U.S.C. § 706(2)(A), (E); *Walker v. Navajo–Hopi Indian Relocation Comm'n*, 728 F.2d 1276, 1278 (9th Cir. 1984)).

The "arbitrary and capricious" standard dictates that "a reviewing court may not set aside an agency rule that is rational, based on consideration of the relevant factors and within the scope of the authority delegated to the agency by the statute." *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 42 (1983). The "standard is narrow and a court is not to substitute its judgment for that of the agency." (*Id.* at 43). The "arbitrary and capricious standard is 'highly deferential, presuming the agency action to be valid and [requires] affirming the agency action if a reasonable basis exists for its decision." *Kern Cnty. Farm Bureau v. Allen*, 450 F.3d 1072, 1076 (9th Cir. 2006) (quoting

*Indep. Acceptance Co. v. California*, 204 F.3d 1247, 1251 (9th Cir. 2000)).

The "substantial evidence" level of proof requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." *Nat'l Fam. Farm Coal. v. EPA*, 960 F.3d 1120, 1132–33 (9th Cir. 2020) (internal quotation omitted). Courts often describe this as "more than a mere scintilla but less than a preponderance." *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995). The reasoning rests in the "fundamental principle that an agency, its experts, and its administrative law judges are better positioned to weigh conflicting evidence than a reviewing court." *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017).

Finally, "summary judgment is an appropriate mechanism" for judicial review under the APA. *Occidental Eng'g Co. v. Immigr. & Naturalization Serv.*, 753 F.2d 766, 770 (9th Cir. 1985). "However, the agency is the fact finder and the court's role 'is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" *Begay v. Off. of Navajo & Hopi Indian Relocation*, 2022 WL 3285443, at *2 (D. Ariz. Aug. 11, 2022) (citing *Occidental Eng'g Co.*, 753 F.2d at 769).

**III. Discussion**

Under the Act, the applicant bears the burden of proving, on December 22, 1974, they were (1) "the head of household" and (2) a resident "of an area partitioned to the Tribe of which they were not [a] member[]." 25 C.F.R. § 700.147(a–b). Here, the parties stipulated that Plaintiff satisfied the head-of-household requirement. (Docs. 14 at 4; 16 at 4). Plaintiff's residency is the only issue.

**A. Plaintiff's Residency**

"Residence is established by proving that the head of household and/or his/her immediate family were legal residents as of December 22, 1974, of the lands partitioned to the Tribe of which they are not members." 25 C.F.R. § 700.97. Residence "is meant to be given its legal meaning [] which requires an examination of a person's intent to reside

combined with manifestations of that intent." 49 Fed. Reg. 22277 (May 29, 1984).[1] Accordingly, "[a]n individual who was, on December 22, 1974, away from the land partitioned to the Tribe of which he/she is not a member may still be able to prove legal residence." (*Id.*)

The Court considers several factors when examining an individual's "intent to reside [in partitioned lands] combined with manifestations of that intent." (*Id.*) Some include:

> Ownership of livestock, Ownership of improvements, Grazing Permits, Livestock sales receipts, Homesite leases, Public health records, Medical and Hospital records, including those of Medicinemen, Trading Post records, School records, Military records, Employment records, Mailing Address records, Banking records, Drivers license records, Voting records—tribal and county, Home ownership or rental off the disputed area, BIA Census Data, Information obtained by Certification Field Investigation, Social Security Administration records, Marital records, Court records, Records of Birth, Joint Use Area Roster, any other relevant data.

49 Fed. Reg. 22278 (May 29, 1984); *see Tso v. Off. of Navajo & Hopi Indian Relocation*, 2019 WL 1877360, at *3 (D. Ariz. Apr. 26, 2019). The final rule further states, "[o]nce legal residence is proven, current occupancy (which is a fluctuating condition) is not required for eligibility." 49 Fed. Reg. 22278.

The IHO concluded there was "[n]o credible evidence . . . to conclude that applicant had a legal residence at the Lukai Spring HPL camp of Fannie Greyhair on December 22, 1974." (Doc. 11 at 220). Rather, the IHO found Plaintiff to be a legal resident of either (1) "the Teesto chapter area of the Navajo Reservation . . . as he was enumerated there as a resident," or (2) the "Seba Dalkai School where he was living with his wife and family and where he had been living for several years." (*Id.*)

In making this decision, the IHO found Plaintiff's testimony confusing and

---

[1] *See also Charles v. Off. of Navajo & Hopi Indian Relocation*, 774 F. App'x 389, 390 (9th Cir. 2019) (quoting 49 Fed. Reg. 22277) ("The 'substantial and recurring contacts' standard applied by the district court is no longer the correct standard under current regulations. The correct standard is 'intent to reside combined with manifestations of that intent.'").

inconsistent, with "other testimony support[ing] the conclusion that the HPL homesite had been abandoned before that date." (*Id.*)  The IHO emphasized testimonial inconsistencies between all witnesses, such as "description of the structures at the HPL site," Plaintiff's omission of a jewelry-crafting trade and downplaying his residence with "his wife and children," and the timing of the reduction or elimination of the family's livestock herd. (*Id.* at 220–23).  As to the BIA Enumeration, the IHO placed weight on Plaintiff and his children being expressly enumerated at the family's "NPL homesite . . . in early 1975," but not being expressly named at the HPL site. (*Id.* at 221).

Plaintiff argues the IHO's decision, regarding his lack of residency, was arbitrary and capricious and unsupported by substantial evidence because it (1) used BIA Enumeration evidence in an "internally inconsistent and contradictory" manner, and (2) disregarded ONHIR's customary use policy. (Docs. 14 at 10, 15, 17; 20 at 2–3, 10).  The Court will address each of Plaintiff's arguments in turn.

**1. BIA Enumeration Evidence**

First, the Court finds the IHO did not use BIA Enumeration evidence inconsistently or contradictorily.  Under 49 Fed. Reg. 22278, the IHO is expressly allowed to consider "BIA Census Data . . . Joint Use Area Roster, [and] any other relevant data." 49 Fed. Reg. 22278; *see Bahe ex rel. Bahe v. Off. of Navajo & Hopi Indian Relocation*, 770 F. App'x 871, 872 (9th Cir. 2019) ("[T]he ONHIR drew reasonable inferences from the Joint Use Area Roster, which, along with other evidence, substantiated the residency determination.").  As Defendant points out, the IHO used BIA Enumeration and testimonial evidence in his decision. (*See* Doc. 11 at 220).  For example, the IHO noted that Plaintiff "identifies the structures at Fannie Greyhair's Lukai Spring residence differently than the other two witnesses" and "downplays his residence at Seba Dalkai School where his wife and children lived." (Doc. 11 at 221).

The Court rejects Plaintiff's assertion that it was contradictory for the IHO to place weight on Plaintiff's named enumeration at the Teesto Chapter NPL ("Navajo Partitioned Lands") site in 1975, while undervaluing that "Fannie and her 'Family Group' were

enumerated at her HPL site" in January and April 1975. (Doc. 20 at 5). Indeed, the record shows Plaintiff was expressly named at the NPL site along with his ex-wife and children. (Doc. 11 at 228). Plaintiff was not expressly named at the HPL site. (*Id.* at 190). The Court finds it reasonable that the IHO was unwilling to find Plaintiff was included in the HPL site's "Family Group" without him (or his ex-wife and/or children) being specifically named.[2]

Plaintiff also argues the BIA Enumeration evidence "should not be relied upon as conclusive evidence of legal residency." (Doc. 14 at 13). To be sure, "[t]he Commission has always taken the position that the enumeration list is not conclusive as to eligibility," but the IHO did not conclusively use the BIA Enumeration evidence here. *Walker*, 728 F.2d at 1279. Instead, the IHO bolstered his finding with testimonial evidence from Plaintiff and other witnesses. (*See e.g.*, Doc. 11 at 220 ("[Plaintiff's] testimony about the [HPL] camp was confusing and inconsistent and other testimony supports the conclusion that the HPL homesite had been abandoned before [December 22, 1974]."); *id.* at 222). The Court thus rejects Plaintiff's contention the IHO conclusively and solely used the BIA Enumeration in his decision.

The Court also rejects Plaintiff's argument that the IHO's use of BIA Enumeration evidence was arbitrary and inconsistent with other applicants' decisions. (*See* Doc. 14 at 13–14). To support this proposition, Plaintiff cites the *Harry Isaac* and *Ruth Begay* (Plaintiff's ex-wife) decisions. (*See* Doc. 14 at 14). Both cases "do not assist in the resolution of this case . . . because they are either distinguishable or have not been shown to be apposite to this case." *Akee v. Off. of Navajo & Hopi Indian Relocation*, 907 F. Supp. 315, 319 (D. Ariz. 1995). First, unlike the *Harry Isaac* decision, the IHO here determined, through BIA Enumeration and testimonial evidence, that Plaintiff's family had abandoned their HPL site before the Act's regulatory deadline of December 22, 1974. (*See* Doc. 11

---

[2] *Compare* Doc. 16 at 2–3 (Defendant stating: "No family members were enumerated with Fannie Greyhair at her HPL site, while thirteen (13) family members, including Plaintiff, were enumerated at the NPL sites."), *with* Doc. 20 at 5 (Plaintiff stating: "The BIA Enumeration Roster, which is part of the record, shows that Fannie and her 'Family Group' were enumerated at her HPL site . . . on January 15, 1975, April 24, 1975 and April 28, 1975.").

- 6 -

at 205).  As for the *Ruth Begay* decision, Plaintiff argues it logically cannot make sense for Ruth to have been "certified as a domiciliary of HPL on December 22, 1974, but Mr. Fuson is found to be a domiciliary of Ms. Begay's apartment on December 22, 1974."  (Doc. 14 at 14).  The Court finds this argument unavailing because the IHO first found Plaintiff to be "a legal resident in the Teesto Chapter area of the Navajo Reservation" on December 22, 1974, with "Ms. Begay's apartment" being an *alternative* legal residence.  (Doc. 11 at 220).  Ruth Begay was also enumerated at her parents' HPL site, which ostensibly entailed different facts than Plaintiff's claim here.  (Doc. 16 at 14); *see Daw v. Off. of Navajo & Hopi Indian Relocation*, 2020 WL 5632121, at *4 (D. Ariz. Sept. 21, 2020) (finding that the agency must apply "the law consistently to cases with similar material facts; it does not require the agency find the same facts for different parties, in different proceedings, and based on different evidence").

### 2. ONHIR's Customary Use Policy

Second, the Court finds the IHO did not ignore ONHIR's "customary use policy." Plaintiff asserts the IHO neglected to apply such a policy, regarding applicants who maintain or are connected to Navajo "traditional use area[s]."  (Doc. 14 at 15).  Plaintiff contends this "policy was made part of the adjudicatory law in the [Minnie Woodie case]." (*Id.*); *see Begay v. Off. of Navajo & Hopi Indian Relocation*, 305 F. Supp. 3d 1040, 1048 (D. Ariz. 2018) ("The concept of maintaining a 'traditional use area' is not expressly codified in federal regulations regarding residency, but [ONHIR] concedes that it has historically recognized this as a basis for residency."); *Shaw v. Off. of Navajo & Hopi Indian Relocation*, 860 F. App'x 493, 494 (9th Cir. 2021) ("[Applicant] qualifies as a legal resident of the land if she was using it for traditional activities."); *Begay v. Off. of Navajo & Hopi Indian Relocation*, 770 F. App'x 801, 802 (9th Cir. 2019) (stating if both a family's HPL and NPL sites "constituted a single 'traditional use area' as of December 22, 1974, [applicant] would be treated as a legal resident of the entire area").  Defendant argues the "Minnie Woodie policy is not official policy that ONHIR or the IHO are required to follow."  (Doc. 16 at 14).

The Court need not determine whether the so-called "Minnie Woodie policy" is ONHIR's official policy or binding precedent because the IHO's decision squarely addressed the issue in Plaintiff's case. The IHO concluded: "If there had been a *traditional use area* that encompassed both sides of the partition line, that traditional use area was abandoned by Fannie Greyhair when her livestock was sold and it did not exist as of the date of passage of the Act." (Doc. 11 at 222 (emphasis added)).

The IHO's decision also belies Plaintiff's contention that his case fits "the Minnie Woodie criteria" because he "lived a traditional lifestyle of grazing livestock and making silver jewelry." (Doc. 14 at 16). The IHO stated "the most bizarre feature of [Plaintiff's relative's] testimony" was that Plaintiff was a "craftsman of jewelry"—a fact Plaintiff omitted entirely in his testimony. (Doc. 11 at 221). Plaintiff also needed to demonstrate he was traditionally grazing livestock as of "the December 22, 1974 regulatory cutoff to determine whether a traditional use area existed that time." *See Begay*, 770 F. App'x at 802. The IHO found Plaintiff unable to do so because the family "participated at least twice in the Livestock Reduction Program several times and her flock and herd were significantly reduced or eliminated by the end of 1974." (Doc. 11 at 217).

Thus, because this Court's "standard is narrow and [this] court is not to substitute its judgment for that of the agency," the IHO's decision should not be disturbed. The IHO's (1) use of BIA Enumeration evidence and (2) findings regarding Plaintiff's family's "traditional use area" are supported by substantial evidence and not arbitrary and capricious. The IHO provided "a reasonable basis . . . for [his] decision" with "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kern Cnty. Farm Bureau*, 450 F.3d at 1076.

**B. IHO's Credibility Findings**

Plaintiff argues the IHO failed to provide specific and cogent reasons for his adverse credibility findings and cherry-picked evidence rather than engaging in a true analysis. (Doc. 20 at 13–14). He takes issue that the IHO found all witnesses' testimonies to be incredible. (*Id.*) Defendant argues substantial evidence supports the IHO's credibility

determinations. (Doc. 16 at 15).

The substantial evidence standard governs when reviewing an IHO's credibility findings. This is often described as "more than a mere scintilla, but less than a preponderance." *Orteza*, 50 F.3d at 749. If "the decision of an ALJ rests on a negative credibility evaluation, the ALJ must make findings on the record and must support those findings by pointing to substantial evidence on the record." *Ceguerra v. Secretary of Health & Hum. Servs.*, 933 F.2d 735, 738 (9th Cir. 1991).

"[I]f an ALJ has grounds for disbelieving material testimony, it is both reasonable and desirable to require the ALJ to articulate those grounds in the original decision." (*Id.* at 740 (citing *Varney v. Secretary of Health & Hum. Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988))). But an IHO's "credibility findings are granted substantial deference by reviewing courts." *Begay*, 305 F. Supp. 3d at 1049 (quoting *De Valle v. Immigr. & Naturalization Serv.*, 901 F.2d 787, 792 (9th Cir. 1990)). This deference stems from the IHO being "in a position to observe [a witness]'s tone and demeanor, to explore inconsistencies in testimony, and to apply workable and consistent standards in the evaluation of testimonial evidence. He[/she] is . . . uniquely qualified to decide whether a [witness]'s testimony has about it the ring of truth." (*Id.* (quoting *Sarvia–Quintanilla v. United States Immigr. & Naturalization Serv.*, 767 F.2d 1387, 1395 (9th Cir. 1985) (alterations in original))).

The Court finds the IHO articulated specific, cogent reasons for his credibility findings. The IHO found Plaintiff incredible because he "downplay[ed] his residence at Seba Dalkai School where his wife and children lived," "completely omitted" his jewelry craftsmanship (which a relative testified about), and "could not accurately identify the improvements at [his grandmother's] Lukai Spring [HPL] home." (*See* Doc. 11 at 218–21); *Begay*, 305 F. Supp. 3d at 1050 (finding the IHO's credibility findings were specific and cogent because he noted plaintiff's difficulty in recalling event dates and witnesses' memory failures and absence from the area). The IHO also found Plaintiff's brother and younger relative to be incredible because all three witnesses had "confusing, conflicting and inconsistent" testimonies. *See Begay*, 2022 WL 3285443, at *4 (finding the

"inconsistencies between Plaintiff's testimony and his mother and sister's testimonies" were a sufficient reason to find plaintiff's testimony incredible). The IHO noted that Plaintiff's younger relative's "recollections are 40 years old from a time when she was . . . 11 years of age which make her memories highly suspect and not believable." (Doc. 11 at 222). The IHO also considered objective evidence, such as the BIA Enumeration and Plaintiff's wife and children residing at the Seba Dalkai School, when he deemed the witnesses incredible. (*Id.* at 218, 220–22).

The Court finds the IHO's credibility findings should not be disturbed. The IHO provided "more than a mere scintilla" of evidence in support of his conclusions. *Orteza*, 50 F.3d at 749. Although this Court might hesitate because the IHO found all three witnesses incredible, "credibility findings are granted substantial deference" and the "[IHO] is . . . uniquely qualified to decide whether [] testimony has about it the ring of truth." *Begay*, 305 F. Supp. 3d at 1049 (citations omitted). The Court finds the IHO had sufficient reason to deem the witnesses here incredible.

## IV. Conclusion

For these reasons, the Court will deny Plaintiff's Motion for Summary Judgment and grant Defendant's Cross-Motion for Summary Judgment. The IHO's decision to deny Plaintiff's relocation benefits appeal, based on a lack of legal residence, was supported by substantial evidence and not arbitrary and capricious.

Accordingly,

**IT IS HEREBY ORDERED** that the Independent Hearing Officer's decision dated October 23, 2015 (Doc. 11 at 216–23) is **affirmed**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 14) is **denied**.

**IT IS FURTHER ORDERED** that Defendant's Cross-Motion for Summary Judgement (Doc. 16) is **granted**.

…

…

- 10 -

**IT IS FINALLY ORDERED** that the Clerk of the Court shall enter judgment and terminate this case.

Dated this 16th day of March, 2023.

_____
Honorable Diane J. Humetewa
United States District Judge